258 N.J. Super. 143 (1992)
609 A.2d 120
RICHARD HRABINSKI AND DEBORAH HRABINSKI, PLAINTIFFS,
v.
EXXON CHEMICAL COMPANY, A DIVISION OF EXXON CORPORATION, JERRY FRIX, FRAN SCHIACCHETANO, ED MILLER, JOHN HEDDEN, INDEPENDENT LABORATORY EMPLOYEES UNION, INC., DONNA HERRAN, DON GIVENS, WILLIAM BOWMAN, ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division Union County.
Decided May 15, 1992.
*144 John J. Haggerty, III (Gold, Haggerty, and Adams), for plaintiffs.
Richard P. Weitzman (Weitzman & Weitzman), for defendants.

*145 OPINION
ALLEY, J.S.C.
1. Introduction:
Plaintiff asserts claims arising from alleged violations of his rights as a "whistleblower" under the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 et seq., against defendants that include his former employer, his former Union, and some of their respective officials. The only claim he has been able to articulate against the Union and its officials is an alleged breach of the duty of fair representation created under federal law (see, e.g., Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)).
The question presented in this motion for summary judgment by the defendant Union and its officials is whether the time bar that applies to plaintiff's claims against them is established by:
(a) a state law statute of limitations, or
(b) a federal six-month limitation period taken from the time allowed for filing unfair labor practices charges with the National Labor Relations Board under Section 10(b) of the Labor Management Relations Act, 29 U.S.C. § 160(b).
For the following reasons, the claims against the Union are barred by the federal six-month limitation period.

2. The Facts:

Plaintiff Richard Hrabinski was employed in a laboratory of defendant Exxon Chemical Company from the beginning of 1987. He left that employment in June 1989 having accumulated about nine and one-half years of service with Exxon Chemical Company and an affiliated Exxon company. (His wife also asserts a claim against the Union and its officials, but it stands or falls with his claim, and unless otherwise specified, "plaintiff" refers to Mr. Hrabinski). Plaintiff was a member of the Independent Laboratory Employees Union, Inc. ("Union") during his employment with Exxon, and the terms and conditions of his employment were governed by collective bargaining agreements between the Union and the employer.
*146 From approximately March 1987 until he left the company at the end of June 1989, plaintiff contends, he was required by Exxon supervisors to participate in a fraudulent scheme of altering and misrepresenting certain laboratory test data. Allegedly he expressed concern to management about being required to participate in these practices and was told that they involved matters of engineering judgment. He also claims that he alerted Union representatives to his concerns and to management's response, but that these representatives told him there was nothing they could do about the situation.
The Union's proofs established without contradiction that its members who are adversely affected by improper action of the employer under the collective bargaining agreement have a right to file grievances on their own, and that printed grievance forms are readily available for that purpose. Although plaintiff claims to have been disturbed about the alleged fraudulent practices of management in his department, during the last two and one-half years of his employment he never filed a grievance concerning his allegedly-required participation in those practices, nor did he ever make a formal request that the Union or any of its duly authorized officers file the grievance on his behalf. Approximately three weeks before he left Exxon, plaintiff attended a meeting with two of his supervisors and (at his request) a Union Delegate. Although the employer allegedly intended to place a warning letter in plaintiff's file concerning certain aspects of his job performance, the Union objected, and as a result of that meeting the issue was resolved. At this meeting, plaintiff did not mention the issue of the alleged fraudulent practices, nor did he request that the Union delegate address the issue at the meeting.
A Vice President of the Union, Donna Herran, has certified that when she learned that plaintiff was resigning, she offered her assistance and specifically inquired whether he might be interested in transferring to a different department, but he did not express any interest, nor did he ask Ms. Herran to have the Union file a grievance in his behalf. After his departure from *147 Exxon in June 1989, plaintiff ceased to be a member of the Union, and neither the Union and/or its representatives heard from him during the next six months. In September 1991, more than two years after he left Exxon, the Union and its officers first became aware through his Complaint in this action that plaintiff had asserted that the Union and its officers had allegedly failed to properly represent his interests between 1987 and June 1989.

3. Discussion:

The Union asserts, and the court agrees, that assuming the Complaint states a claim for relief against the Union and its officers, the claim could be based only upon a breach of the duty of fair representation. Plaintiff was unable to point to any other basis on which the Union could take legal steps concerning Exxon's alleged treatment of plaintiff. If plaintiff had told the Union about the alleged fraudulent practices of which he now complains, action by the Union vis a vis the employer would be required only by virtue of the Union's rights on behalf of its members under the labor agreement. The Union's duty, if any, to become involved with management about plaintiff's allegations could only have been derived from its responsibility under federal labor law to afford the plaintiff fair representation.
In DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1963), the Supreme Court was faced with deciding which time bar governed a suit against an employer and Union which alleged that the employer had breached a collective bargaining agreement and that the union had breached its duty of fair representation in the handling of a grievance or arbitration proceeding. The issue was whether to apply:
(a) a state statute of limitations; or
(b) § 10(b) of the Labor Management Relations Act, 29 U.S.C. § 160(b) ("... no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board....")
*148 The Supreme Court held that § 10(b) articulates the limitation period that governs this type of suit both as against the employer and against the Union. State statutes of limitations are not "mechanically applied," and in some cases (such as the one before the Court) "timeliness rules drawn from federal law" are to be applied. 462 U.S. at 161-62, 103 S.Ct. at 2289.
Noting that claims against an employer and Union for wrongful discharge in these types of cases are "intertwined," the Court in DelCostello concluded:
"The NLRB has consistently held that all breaches of a Union's duty of fair representation are in fact unfair labor practices. E.g., Miranda Fuel Co., 140 N.L.R.B. 181 (1962), enf. denied, 326 F.2d 172 (CA.2 1963).... Even if not all breaches of the duty are unfair labor practices, however, the family resemblance is undeniable, and indeed there is substantial overlap...." DelCostello, 462 U.S. at 170, 103 S.Ct. at 2293-2294.
The enforcement of collective bargaining agreements is governed by substantive federal common law "which the courts must fashion from the policy of our national labor laws." Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 456, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957). Indeed, DelCostello applied federal law to a federal right, the same right from which depends the claim of the plaintiff here. Plaintiff's allegations against his former Union represent the very type of claim contemplated by the Supreme Court in DelCostello. The Supreme Court plainly did not limit the DelCostello holding to establishing a rule of procedure for federal courts only, but mapped out the boundaries of a substantive federal right, and, "the choice of a limitations period for a federal cause of action is itself a question of federal law." 462 U.S. at 159, n. 13, 103 S.Ct. at 2289, n. 13. This case does not involve the preemption of a conflicting state claim by a federal right, but the assertion of a claim that can only be deemed federal. Plaintiff has sought to enforce these rights in state court, but he brings his federal rights to this court with the federal law limitations on those rights that the Supreme Court articulated in *149 DelCostello.[1]See also Maher v. New Jersey Transit R.O., 125 N.J. 455, 476-77, 593 A.2d 750 (1991).
The § 10(b) six-month limitation period begins to run when a plaintiff is or should be aware of the acts constituting the alleged violation, e.g., that the Union is not going to pursue a grievance on his or her behalf, see, Proudfoot v. Seafarer's International Union, 779 F.2d 1558, 1559 (11th Cir.1986) and Lacina v. G-K Trucking, 802 F.2d 1190, 1192 (9th Cir.1986). If plaintiff had any complaint against his Union or its officers for failing to take up with the employer his concerns about the alleged ongoing "fraudulent practices," he necessarily was or should have been aware, when he left the Company in June 1989, that his Union and its representatives were refusing to become involved in any such issue with the employer. Even if he had not wanted to press the issue while he was still employed by Exxon Chemical, after he left the Company in June 1989 (and assuming there was some action which the Union could take in his behalf at that point), it is uncontroverted that he made no further contact with the Union following his resignation.
The federal cases relied upon by plaintiff are distinguishable from this case and DelCostello, because they all deal with two situations:
(1) A suit brought against a Union by one of its members, with no separate claim filed against the employer. Cf. Marshall v. Local Union No. 6, 756 F. Supp. 408 (E.D.Mo. 1991), *150 citing Reed v. United Transp. Union, 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989); or
(2) A suit brought against the employer alone, with no separate claim filed against the Union. Cf. Jackson v. Southern California Gas Co., 881 F.2d 638 (9th Cir.1989); Berda v. CBS Inc., 881 F.2d 20 (3d Cir.1989); Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211-213, 105 S.Ct. 1904, 1911-1912, 85 L.Ed.2d 206 (1985); Miller v. AT & T, 850 F.2d 543 (9th Cir.1988).
Plaintiff also cites Maher v. New Jersey Transit R.O., 125 N.J. 455, 593 A.2d 750 (1991), where plaintiff sued his employer for alleged "whistleblower" violations and also joined his Union as a defendant. The Supreme Court reversed the dismissal of the claim against the union because the complaint that the union had breached its duty of fair representation was not subject to "adequate administrative means for resolving disputes" under the Railway Labor Act. Id. at 476-77, 593 A.2d 750. In permitting that fair representation claim to proceed in the state courts, however, the Supreme Court emphasized, "When hearing such claims, the Court is acting on a federal statutory right (in this case inferred from the Railway Labor Act) and must apply federal law." Here, plaintiff's assertions against the Union evoke only a claim of a breach of the duty of fair representation under federal law, and that law includes the § 10(b) six-month limitation period applicable to those claims under DelCostello. 462 U.S. at 155, 159, at n. 13, 103 S.Ct. at 2285, 2289, at n. 13.
This court need not determine whether plaintiff may have a separate action against the former employer in this case (similar to the claim in Maher) based on an alleged violation of his "whistleblower" rights. It is sufficient to conclude that his claims against the Union defendants necessarily involve the collective bargaining agreement and the union-management relationship set forth in the agreement for resolving of outstanding grievances.
*151 Accordingly, plaintiff's claims against the Union are barred by the six month limitation period which governs under federal law. If the Union and its officers had any obligation to plaintiff concerning his alleged problem, it must have arisen before he departed the company in June 1989. Giving plaintiff the benefit of all doubts concerning the facts he alleges, the latest date for filing an action against his Union representatives based on an alleged breach of the duty of fair representation can be placed six months thereafter, i.e., at the end of 1989. Plaintiff's Complaint in fact was not filed until June 25, 1991, almost two years after the date of his resignation, and eighteen months too late under the applicable limitation period. The claims of both plaintiff Richard Hrabinski and his wife Deborah Hrabinski (which are clearly derivative in nature) are thus time-barred, and summary judgment dismissing the Complaint will be granted in favor of the defendant Union and its officials.
NOTES
[1] When the Supreme Court applied the § 10(b) six-month time bar in DelCostello instead of the state limitations periods raised in the case, this had the effect, in one aspect of the case, of overriding a thirty-day statute of limitations governing appeals from arbitration awards, thus expanding the period to six months. It had the effect in another aspect of the case of supplanting a three-year statute of limitations for "malpractice actions" with § 10(b)'s six-month period. See also West v. Conrail, 780 F.2d 361 (3rd Cir.1985), rev'd on other grounds, 481 U.S. 35, 107 S.Ct. 1538, 95 L.Ed.2d 32 (1987) (six-month period controls a claim alleging a "hybrid" breach of contract/breach of duty of fair representation against an employer, the Union, and a Union representative).