Willie ALLEN, Appellant,

v.

**HENNEPIN COUNTY, Respondent,**

**Minnesota Teamster Public and Law Enforcement Employees' Union Local No. 320, Respondent.**

No. A03–1752.

Court of Appeals of Minnesota.

June 1, 2004.

Matthew L. Fling, Edina, MN, for appellant.

Amy Klobuchar, Hennepin County Attorney, Martin D. Munic, Assistant County Attorney, Minneapolis, MN, for respondent Hennepin County.

Patrick J. Kelly, Sarah J. Sonsalla, Kelly & Fawcett, P.A., St. Paul, MN, for respondent Minnesota Teamsters Public and Law Enforcement Employees' Union Local No. 320.

Karin E. Peterson, Ann E. Walther, Rice, Michels & Johnson, LLP, Minneapolis, MN, Amicus Curiae for Brooklyn Park Police Federation, International Association of Firefighters, Local 82, The Minnesota State Patrol Troopers Association, Olmsted County Sheriffs Deputies Association, The Police Officers Federation of Minneapolis, and the St. Paul Supervisors Association.

Considered and decided by HARTEN, Presiding Judge; HALBROOKS, Judge; and MINGE, Judge.

## OPINION

HARTEN, Judge.

Appellant employee challenges the district court's dismissal of his claims of wrongful discharge against his employer and breach of the duty of fair representation against his union for being untimely. He argues that rather than the 90–day statute of limitations for vacating arbitration awards under the Uniform Arbitration Act, the court should have applied the six-month period found in federal labor law, or alternatively, the six-year period used in tort and other claims. Because public policy favors prompt resolution of labor disputes and because other comparable Minnesota claims have short limitation periods, we affirm.

## FACTS

From 1994 to 2001, appellant Willie Allen was employed by respondent Hennepin County (the county) as a Juvenile Corrections Officer at the Hennepin County Home School. In November 2001, the county gave appellant a notice of intent to dismiss, citing gross insubordination for appellant's alleged failure to comply with the school's dress code, which prohibited wearing sunglasses indoors. The Director of Community Corrections upheld the dismissal upon appellant's administrative appeal.

At the time, a collective bargaining agreement (CBA) existed between the county and appellant's union, respondent Minnesota Teamsters Public and Law Enforcement Employees' Union, Local No. 320 (the union). The CBA guaranteed that employees would only be disciplined for just cause and established a procedure for the settlement of grievances. Pursuant to the CBA, appellant protested his discharge to the union and requested that it invoke the grievance procedure. The union filed a grievance on 4 January 2002. On 19 June 2002, however, it informed appellant that it would not process his grievance to arbitration.

On 18 December 2002, appellant commenced this action against the county for wrongful discharge and, the following day, he sued the union for breach of its duty of fair representation. His complaint additionally made reference to the unfair labor practice statute but did not include a separate count alleging such a claim. Respondents moved for judgment on the pleadings, asserting the affirmative defense that appellant's claims were barred by the statute of limitations. The district court applied the 90–day statute of limitations in Minn.Stat. § 572.19, subd. 2 (2002), for vacating arbitration awards under the Uniform Arbitration Act and dismissed appellant's claims as untimely. This appeal followed.

## ISSUES

1. What statute of limitations applies to appellant's claims of wrongful discharge

and breach of the duty of fair representation?

2. Does appellant's allegation of fraud by the union toll the 90 days?

3. Does appellant's unfair labor practices claim against the county survive his failure to satisfy the jurisdictional requirements?

### ANALYSIS

### 1. Statute of Limitations Under the Public Employment Labor Relations Act

■ Appellant argues the district court applied the wrong statute of limitations in dismissing his claims. The construction and applicability of a statute of limitations is a question of law, reviewed de novo. *Benigni v. County of St. Louis,* 585 N.W.2d 51, 54 (Minn.1998).

■ Minnesota's Public Employment Labor Relations Act (PELRA) governs labor relations between public employees and their employers. Minn.Stat. §§ 179A.01–.30 (2002). Under PELRA, if a majority of public employees in a bargaining unit indicate that they want a union, the union becomes their exclusive bargaining representative. *See* Minn.Stat. § 179A.12, subd. 2. As such, the union has a judicially created duty to fairly represent its members in collective bargaining and enforcing the agreement. *Eisen v. State, Dept. of Pub. Welfare,* 352 N.W.2d 731, 735 (Minn.1984).

■ A discharged employee whose union decides not to take his or her grievance to arbitration may sue both the union for breach of the duty of fair representation (DFR) and the employer for breach of the labor contract. *See Lipka v. Minn. Sch. Employees Ass'n, Local 1980,* 550 N.W.2d 618, 621 n. 7 (Minn.1996). In these so-called hybrid claims, the employee must plead and prove the case against the union in order to succeed against the employer. *Paoletti v. Northwestern Bell Telephone Co.,* 370 N.W.2d 672, 675 (Minn.App.1985), *review denied* (Minn. 26 Sept. 1989).

PELRA does not specify, however, nor has this court addressed, the statute of limitations for these hybrid claims. Respondents argue, and the district court ruled, that the appropriate period is the 90–day period for vacating arbitration awards under the Minnesota Uniform Arbitration Act (the UAA). *See* Minn.Stat. § 572.19, subd. 2 (2002). The district court concluded that *Eisen,* which states that the UAA governs the authority and procedure for judicial review of labor arbitrations under PELRA, mandated the use of the UAA's statute of limitations. Additionally, the district court noted that the public policy behind PELRA and the differences between it and the National Labor Relations Act (NLRA), governing the private labor sector, supported application of the 90–day period.

Nonetheless, appellant argues that the more appropriate statute of limitations is the six-month period the United States Supreme Court applied in *DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Alternatively, he urges this court to follow other states in applying the statute of limitations for claims most analogous to these hybrid claims. We decline to accept these arguments, and conclude that the 90–day statute of limitations found in the UAA is the least objectionable law in cases such as the one before us.

In *DelCostello,* the Court concluded that the six-month period in § 10(b) of the NLRA for bringing unfair labor practices charges also applied to DFR and wrongful termination claims brought by private-sector employees under federal law. 462 U.S. at 152, 103 S.Ct. at 2284. Prior to this

decision, because no federal statute of limitations expressly governed these causes of action, courts applied the state statute of limitations for claims most similar to hybrid claims. *Id.* at 158, 103 S.Ct. at 2287. The *DelCostello* Court found, however, that "[i]n some circumstances ... state statutes of limitations can be unsatisfactory vehicles for the enforcement of federal law ... and it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies." *Id.* at 161, 103 S.Ct. at 2289 (quotation omitted). The Court criticized the use of arbitration statutes in these cases because they "fail to provide an aggrieved employee with a satisfactory opportunity to vindicate his rights under [applicable federal law]. *Id.* at 166, 103 S.Ct. at 2291. The Court then found no need to rely on state law, as § 10(b) of the NLRA was "designed to accommodate a balance of interests very similar to that at stake ... [and was] an analogy to the present lawsuit more apt than any of the suggested state-law parallels." *Id.* at 169, 103 S.Ct. at 2293.

Appellant uses *DelCostello* to argue that an action to vacate an arbitration award is not analogous to a hybrid claim in which no arbitration has taken place and that the 90–day period is unreasonable as it provides insufficient time to discover relevant facts, frame the issue, and hire counsel. But *DelCostello's* analysis under the NLRA is not binding on this court, and we find its analysis unpersuasive as to PELRA. *See Int'l Union of Operating Eng'rs, Local No. 49 v. City of Minneapolis,* 305 Minn. 364, 369, 233 N.W.2d 748, 752 (1975) (concluding that decisions under the NLRA are not binding when interpreting PELRA). *DelCostello* looked to NLRA's unfair labor practices claims because "the family resemblance [to hybrid claims] is

undeniable." 462 U.S. at 170, 103 S.Ct. at 2293.

■ The differences between NLRA and PELRA show that NLRA is not the most appropriate statute for our purposes herein. PELRA was enacted to promote orderly and constructive relationships between public employees and their employers. Minn.Stat. § 179A.01 (2002). The act recognizes that ongoing "[u]nresolved disputes between the public employer and its employees are injurious to the public.... [Therefore, a]dequate means must be established for minimizing them and providing for their resolution." *Id.* As a result, PELRA mandates that "[a]ll contracts must include a grievance procedure providing for compulsory binding arbitration of grievances including all written disciplinary actions." Minn.Stat. § 179A.20, subd. 4(a). NLRA does not include such requirement. Further, PELRA does not contain a statute of limitations for unfair labor practices claims. *Compare* Minn. Stat. § 179A.13 *and* 29 U.S.C. § 160(b) (1998) (six-month statute of limitations for claims of unfair labor practices). The limitation period for unfair labor practices under the NLRA was pivotal to the Supreme Court's adoption of that period as against the 90–day period. *See DelCostello,* 462 U.S. at 169, 103 S.Ct. at 2293.

While we recognize the difficulties faced by employees in applying the 90–day period, the inclusion of mandatory arbitration in all public employee labor contracts and the public injury that would result from drawn-out labor disputes persuades us that a shorter period is required. Minnesota favors prompt settlement of employment disputes. *See Michael–Curry Cos. v. Knutson Shareholders Liquidating Trust,* 434 N.W.2d 671, 673 (Minn.App.1989) (stating that one of the fundamental objectives of the UAA is speedy resolution of labor disputes), *aff'd,* 449 N.W.2d 139

(Minn.1989). Labor relationships require stability, and the longer the period in which an employee has to bring his claim, the more uncertainty an employer faces in future hiring and staffing decisions.

█ We also find persuasive the fact that provisions involving challenges by other public employees contain similar comparatively short periods. A timely petition for a writ of certiorari is the exclusive method by which a discharged employee may secure judicial review of a county's employment decision. *Dietz v. Dodge County,* 487 N.W.2d 237, 239 (Minn.1992). Appeals by a writ of certiorari must be filed within 60 days of due notice of the proceeding to be reviewed. Minn.Stat. § 606.01 (2002). Similarly, a veteran must request a hearing "within 60 days of receipt of the notice of intent to discharge" or the right to a hearing is waived. Minn. Stat. § 197.46 (2002). Appellant does not demonstrate how any additional hurdles an employee may face in bringing a hybrid claim are so onerous as to require more than 90 days when the aforesaid claimants receive only 60 days.

For these reasons, we also reject appellant's contention that we should follow other states in finding hybrid claims most analogous to other causes of action with longer statutes of limitation. In *Graham v. Quincy Food Serv. Employees Ass'n,* 407 Mass. 601, 555 N.E.2d 543, 549 (1990), the court applied the 3–year statute of limitations for actions in tort to hybrid claims, reasoning that a hybrid claim was similar to a tort claim because the plaintiff alleges that the union breached the duty it owed to the plaintiff. Hybrid claims were also found to be similar to attorney-malpractice claims because an employee depends on the union for representation in a quasi-legal proceeding similarly to the way a client relies on an attorney. *Id.* at 549–50. *See also Casner v. Am. Fed'n of State,*

*County & Mun. Employees,* 658 A.2d 865, 870–71 (Pa.Commw.Ct.1995) (finding hybrid claims most analogous to attorney-malpractice claims); *Norton v. Adair County,* 441 N.W.2d 347, 355 (Iowa 1989) (applying statute of limitations for attorney-malpractice actions).

These cases do not involve factors similar to those that generated Minnesota's labor laws, and therefore, appellant's reasoning is unpersuasive. First, the public-employment laws of Iowa and Massachusetts do not require mandatory arbitration; instead these laws only enforce voluntary arbitration agreements. Iowa Code § 20.18 (2001); Mass. Gen. Laws ch. 150C § 1 (1999). Second, these states' courts have not applied arbitration acts to their labor laws as has Minnesota, to-wit, in *Eisen,* the Minnesota Supreme Court stated that the UAA governs the authority and procedure for judicial review of labor arbitrations under PELRA. 352 N.W.2d at 734. While *Eisen* did not involve a statute of limitations question, it also did not limit the application of the UAA to particular contexts. The general language in *Eisen* suggests that the UAA's statute of limitations applies in the labor context. *Eisen* was decided in 1984, and the Minnesota legislature has not reacted by amending PELRA to specify a different statute of limitations. We conclude that the 90–day period in the UAA for vacating arbitration awards applies to employees' hybrid claims under PELRA because it is the least problematic of our limited options.

## 2. Commencement of the 90 Days

Appellant argues that even if the 90–day period applied, it did not start running immediately upon his receipt of the union's letter. An appeal from an arbitration award "shall be made within 90 days after delivery of a copy of the award to the applicant, except that, if predicated upon

corruption, fraud or other undue means, it shall be made within 90 days after such grounds are known or should have been known." Minn.Stat. § 572.19, subd. 2 (2002). Appellant contends that an action for breach of DFR is akin to conduct "predicated upon corruption, fraud or other undue means" and therefore a factual determination must be made as to when he knew or should have known of the union's breach.

■ A union breaches its duty of fair representation only when its conduct toward a bargaining unit member is "arbitrary, discriminatory or in bad faith," which is "substantially evidenced by fraud, deceitful action or dishonest conduct" by the union. *Sonenstahl v. L.E.L.S., Inc.,* 372 N.W.2d 1, 5 (Minn.App.1985) (quotations omitted). Appellant correctly argues that the grounds for a breach of DFR claim can be similar to a claim of fraud in an action to vacate an arbitration award. But, the so-called fraud in a DFR claim is premised on the union not pursuing the employee's claim, which is known to the employee and employer upon the union's notification that it is not pursing the grievance.

On 19 June 2002, appellant received the letter from the union. He makes no assertion that during the subsequent 90 days he was under the impression that the union was proceeding with his grievance. Accordingly, appellant discovered the cause of action on the day he received the union's letter and had 90 days to file his claim.

### 3. Jurisdictional Requirements of Unfair Labor Practices Claims

Appellant argues that even if his breach of DFR and wrongful discharge claims are barred by the 90–day statute of limitations, his unfair labor practices claim against the county is not subject to the limitation period. "[A]ny employee ... aggrieved by an unfair labor practice ... may bring an action for injunctive relief and for damages caused by the unfair labor practice...." Minn.Stat. § 179.13, subd. 1 (2002). Appellant contends that these claims are private causes of action under *Edina Educ. Assoc. v. Bd. of Educ. of Indep. School Dist. No. 273 (Edina),* 562 N.W.2d 306, 310 (Minn.App.1997) (addressing a claim that derived from both state law and contract), *review denied* (Minn. 11 June 1997). As such, he argues that his claims do not require the utilization of the grievance mechanism or exhaustion of administrative remedies and are therefore not subject to the UAA and its statute of limitations. He argues that because unfair labor practices claims are statutorily created, the court should apply Minn.Stat. § 541.05, subd. 1(2) (2002), which states that actions upon liability created by statute shall be commenced within six years.

■ We do not reach the merits of appellant's arguments. Minn.Stat. § 179A.13, subd. 1 (2002) requires that:

A copy of any complaint alleging an unfair labor practice must be filed with the commissioner at the time it is brought in district court. The party bringing an unfair labor practice action in district court shall also transmit to the commissioner any orders or judgments of the court within ten days of the order or judgment.

Filing a copy of the complaint with the commissioner is a "condition precedent to [bringing] a PELRA claim." *Lee v. Regents of the Univ. of Minn.,* 672 N.W.2d 366, 373 (Minn.App.2003). Appellant did not present any evidence that he filed the complaint. Further, in its brief, the county attached a letter from the Deputy Commissioner of the Bureau of Mediation Services stating that appellant did not file an

unfair labor practice complaint with the department.

Although this letter was not part of the record below, we find that it falls within the exception to the rule that this court may not base its decision on matters outside the record on appeal. *See Plowman v. Copeland, Buhl & Co.*, 261 N.W.2d 581, 583 (Minn.1977) (considering evidence not in the record when the evidence is documentary, of a conclusive nature, and will help sustain verdicts and judgments). The letter helps to affirm the district court judgment and conclusively shows that appellant did not file a copy of his complaint. Further, the filing status of appellant's complaint can easily be determined by inquiring with the bureau, whose accuracy cannot be questioned. *See Femrite v. Abbott Northwestern Hosp.*, 568 N.W.2d 535, 541 (Minn.App.1997) (taking judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" (quotation omitted)), *review denied* (Minn. 18 Nov. 1997).

We therefore take judicial notice of the letter and reject appellant's unfair labor practices claim against the county based on failure to follow the statutory requirements for bringing such a claim.

### DECISION

Public policy indicates that the 90–day statute of limitations in the Uniform Arbitration Act should apply to appellant's hybrid claim. The period is not tolled by appellant's allegation of fraud by the union. Because appellant did not file his claim within the 90 days and because he failed to satisfy the jurisdictional requirements for his unfair labor practices claim, the district court did not err in dismissing his claims.

**Affirmed.**

MINGE, Judge (dissenting).

I respectfully dissent. I recognize that statutes of limitation promote an important policy of bringing closure to disputes and protecting people from stale claims. *Wschola v. Snyder*, 478 N.W.2d 225, 227 (Minn.App.1991), *review denied* (Minn. Feb. 10, 1992). But because these statutes, especially those providing for short periods, can lead to harsh results, they have been narrowly construed. *See Kittson County v. Wells, Denbrook & Assoc.*, 308 Minn. 237, 241, 241 N.W.2d 799, 801 (1976) (construing statute of limitations narrowly, in part, because failing to do so could have a harsh result); *Rademacher v. Tountas*, 474 N.W.2d 446, 449 n. 2 (Minn.App.1991) (citing *Kittson* for the proposition that ambiguous statutes of limitations are strictly construed against those invoking their protection). *Cf. Kaiser v. Mem'l Blood Ctr. of Minneapolis, Inc.*, 486 N.W.2d 762 (Minn. 1992) (narrowing the reach of a short medical limitation statute and applying the general six-year statute).

We face an awkward choice in this case. In part, it arises under the Public Employee Labor Relations Act (PELRA), which is structured to promote prompt resolution of disputes. *See* Minn.Stat. §§ 179A.01–.30 (2002 & Supp.2003). However, PELRA does not include any provision limiting the time for bringing claims of the type in this proceeding. The general statute of limitation provides a six-year period for actions upon express or implied contracts or other obligations. Minn.Stat. § 541.05, subd. 1(1) (2002). It should apply to the case before us absent a shorter, specific statute. This six-year period is long, but the 90–day statute of limitation for appealing arbitration awards under the Uniform Arbitration Act that has been applied by the majority is very short.

Perhaps more important is the fact that the 90–day arbitration appeal limitation on

actions only applies to this case by analogy. *See* Minn.Stat. § 572.19, subd. 2 (2002). Appellant's claim has not been the subject of any arbitration; only a refusal to arbitrate and an alleged breach of the duty of fair representation (DFR). There was no arbitration from which the appellant could appeal.

Equally important since the arbitration statute does not clearly apply, appellant Willie Allen and his attorney could not reasonably be expected to know that he would be subject to its terms. It is doubly harsh to unexpectedly face a short limitation of action statute.

Further, applying the 90–day limitation period in the arbitration law is not related to the PELRA's public policy of "provid[ing] for the protection of the rights of the public employee." Minn.Stat. § 179A.01(3) (2002). Too tight a timeframe may deny an employee the opportunity to vindicate his or her rights. In *DelCostello v. Int'l Bhd. Of Teamsters*, the Supreme Court discussed the unfairness of a tight timeframe in this setting as follows:

> In the labor setting .... the employee will often be unsophisticated in collective-bargaining matters, and he will almost always be represented solely by the union. He is called upon, within the limitations period, to evaluate the adequacy of the union's representation, to retain counsel, to investigate substantial matters that were not at issue in the arbitration proceeding, and to frame his suit. Yet state arbitration statutes typically provide very short times in which to sue for vacation of arbitration awards.

462 U.S. 151, 165–66, 103 S.Ct. 2281, 2291, 76 L.Ed.2d 476 (1983).

When faced with this issue, courts in other jurisdictions have declined to apply the short arbitration statutes of limitation. In *DelCostello*, the Supreme Court criticized the analogy to and the short limit period of arbitration statutes because they "fail to provide an aggrieved employee with a satisfactory opportunity to vindicate his rights...." 462 U.S. at 166, 103 S.Ct. at 2291. Two states have applied the longer federal labor limitations period of six months. *See Ray v. Org. of Sch. Admin. & Supervisors, Local 28*, 141 Mich.App. 708, 367 N.W.2d 438, 439–40 (Mich.Ct.App. 1985); *Hrabinski v. Exxon Chemical Co.* 258 N.J.Super. 143, 609 A.2d 120, 122–24 (Ct.Law Div.1992).

Other state courts have applied their general, multi-year limitation period for tort claims and attorney-malpractice claims rather than the short arbitration statutes of limitation. *See Casner v. Am. Fed'n of State, County & Mun. Employees*, 658 A.2d 865, 870–71 (Pa. Commw.Ct.1995); *Norton v. Adair County*, 441 N.W.2d 347, 355 (Iowa 1989); *Graham v. Quincy Food Serv. Employees Ass'n*, 407 Mass. 601, 612–14, 555 N.E.2d 543, 549–50 (1990); *Baker v. Bd. of Educ.* 70 N.Y.2d 314, 520 N.Y.S.2d 538, 514 N.E.2d 1109, 1111–1113 (1987). In applying the longer limitation period, some courts invited the legislature to determine whether a shorter period should be enacted. *See Baker*, 520 N.Y.S.2d 538, 514 N.E.2d at 1113. In some cases, the legislature has responded. *See* N.Y. C.P.L.R. 217(2)(a) (McKinney 2003) (shortening New York's limitations period for breach of DFR claims to four months).

When presented with the limited options available to us, we should apply the six-year period found in Minn.Stat. § 541.05, subd. 1(1) and call the legislature's attention to the absence of a limitation period in the PELRA.